FILED
JAN 2 6 2005
LEONARD GREEN, Clerk

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 03-4235

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.
This notice is to be prominently displayed if this decision is reproduced.

REMONTE McDADE,

    Petitioner-Appellant,

v.

HARRY K. RUSSELL, Warden,

    Respondent-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

1:00 CV 1016

---

**BEFORE: MARTIN, and MOORE, Circuit Judges; BELL, District Judge.**[*]

**BELL, District Judge.** Petitioner Remonte McDade appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. The issue certified for appeal by the district court is whether there was sufficient evidence supporting McDade's conviction of attempted aggravated murder. We affirm.

I.

The underlying events of this case occurred while McDade was employed at Galerie Au Chocolat, a novelty gifts factory. On October 12, 1996, Alan Hadam, Director of Human Resources for Galerie, noticed McDade eating in the lunchroom when he should have been working. McDade refused to return to work and continued to eat. Later that day, McDade

---

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

No. 03-4235                                  2
*McDade v. Russell*

asked his supervisor, Vicky Coston, if he could leave work to buy a gun. McDade was allowed to leave. McDade then went to a local K-Mart where he purchased a .22 caliber rifle. Upon returning to work that same day, McDade had another confrontation with his supervisor. Coston believed that McDade had not clocked out when he left and told him that his actions were problematic. McDade responded by inquiring whether Coston would be coming to work Monday. She replied that she would be. Due to the problems with McDade's work, Coston and Hadam determined that he should be fired.

On the following Monday, October 14, 1996, Ted Prisant, the plant manager, observed McDade in the lunchroom during work hours. Prisant noticed that McDade was carrying a box. When asked about the contents of the box, McDade responded, "Jesus Christ." Prisant advised McDade that he needed to leave the box in the production office and could not take it with him into his work area. McDade ignored Prisant's request and refused to allow Prisant to look in the box. As McDade passed by Prisant, he noticed that the box had the word "firearm" on it. Prisant also noted that McDade was wearing what Prisant described as "safety goggles" or "sportsmen's glasses." Concerned by McDade's actions, Prisant ordered all employees off the production line and alerted security. Security, in turn, contacted the local police. Meanwhile, McDade began sweeping the floor with the box located twenty feet away.

When the policed arrived, the box was ten feet from McDade. The police subdued him and opened the box, discovering the .22 caliber rifle loaded with twelve rounds of ammunition. While in police custody, McDade confessed that he bought the gun at K-Mart,

test fired it from the balcony of his apartment, and that he brought it to work to shoot his supervisor "because he was gay." J.A. II at 412.

Thereafter, McDade was indicted for attempted aggravated murder, inducing panic, and carrying a concealed weapon. A jury found McDade guilty of attempted aggravated murder and carrying a concealed weapon. The state trial court sentenced him to 11 years in prison. McDade appealed asserting, among other issues, that he had been denied his right to due process because his convictions were not supported by sufficient evidence. The Ohio First District Court of Appeals affirmed McDade's conviction confining its discussion of the sufficiency of evidence claim to a single sentence stating that reasonable minds could reach different conclusions regarding whether each element of the charged offenses had been proven beyond a reasonable doubt. J.A. I, 214-15. Subsequently, the Ohio Supreme Court dismissed McDade's appeal from the appellate court decision. McDade then filed the present petition for a writ of habeas corpus in the United States District Court, Southern District of Ohio, Western Division. The district court dismissed the petition on August 7, 2003 but granted a certificate of appealibility on McDade's claim that his attempted aggravated murder conviction was not based upon sufficient evidence.

II.

We review a district court's decision to grant or deny the writ of habeas corpus de novo. *Bannerman v. Snyder*, 325 F.3d 722, 723 (6th Cir. 2003) (citing *Charles v. Chandler*, 180 F.3d 753, 755 (6th Cir. 1999)). Since the district court did not conduct an evidentiary hearing, we review its factual findings *de novo* as well. *Northrop v. Trippett*, 265

No. 03-4235                     4
*McDade v. Russell*

F.3d 372, 377 (6th Cir. 2001) (citing *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000); *Moore v. Carlton*, 74 F.3d 689, 691 (6th Cir. 1996)).

An application for a writ of habeas corpus will not be granted unless the state court's adjudication of the claim: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000). In an insufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). This standard must be applied with reference to the substantive elements of the criminal offense as defined by state law. *Id.* at 324, n.16.

Under Ohio law a conviction of criminal attempt requires that a defendant have the required *mens rea* for the target offense and must engage in conduct directed toward commission of that offense. *State v. Woods*, 48 Ohio St.2d 127, 131-32, 357 N.E.2d 1059, 1063 (Ohio 1976), *death penalty judgment vacated*, 438 U.S. 910 (1978), *overruled on other grounds by State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140 (Ohio 1977). In addition, the *Woods* court established that an attempt occurs when a person purposefully does or omits to do anything constituting, "a substantial step in a course of conduct planned to culminate in his commission of the crime." *Id.* In order to be a "substantial step," conduct must be

No. 03-4235 5
*McDade v. Russell*

"strongly corroborative of the actor's criminal purpose." *Id.*; *see also State v. Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038 (Ohio 1991) (holding that the act of pointing a deadly weapon at another, coupled with a threat which indicates an intention to use the weapon, is sufficient evidence to constitute an attempt offense).

The parties agree on the essential elements constituting a criminal attempt in Ohio. McDade contends, however, that his conduct did not satisfy the substantial step requirement in that it only amounted to possession of a firearm. In support, McDade argues that his actions are similar to *State v. Mills*, 62 Ohio St.3d 357, 370, 582 N.E.2d 972, 984 (Ohio 1992), and *State v. Brooks*, 44 Ohio St.3d 185, 192, 542 N.E.2d 636, 642-43 (Ohio 1989), in which the Ohio Supreme Court held that evidence that a defendant aimed a weapon at another without additional evidence of the defendant's intent was not sufficient to support a conviction for criminal attempt. In addition, McDade points to *Braxton v. United States*, 500 U.S. 344 (1991), in which the Supreme Court considered whether a defendant took a substantial step toward killing a federal marshal to support a conviction under the federal attempt statute. Braxton fired two gunshots at the door of his home as federal marshals attempted to execute a warrant for his arrest. *Braxton*, 500 U.S. at 345. The Court held that Braxton's actions did not establish attempted murder because the stipulated facts were ambiguous as to Braxton's intent in firing his weapon. *Id.* at 350-51.

McDade characterizes his actions as being similar to *Mills* and *Braxton* in that he merely carried a weapon into the factory and did not engage in a "substantial step" toward murder. Further, McDade contends that, as in *Mills* and *Braxton*, his intent was ambiguous,

in light of the fact that he only confessed to an intent to shoot, as opposed to kill, his supervisor and that none of the supervisors were "gay."

We find that *Mills* and *Braxton* are distinguishable from this case. In both *Mills* and *Braxton*, the defendants' intent was not clear and therefore they did not satisfy the *mens rea* element of criminal attempt. In this case, McDade's intent is made clear by his confession to the police. While we recognize that McDade only confessed to a desire to "shoot his supervisor," we find that there was sufficient evidence from which the jury could infer McDade's intent to kill. *See State v. Robinson*, 161 Ohio St. 213, 118 N.E.2d 517 (1954) (holding that a jury may infer an intent to kill from the surrounding circumstances). McDade's effort to interject ambiguity into his stated intent is unavailing. McDade's confession must be viewed in light of the fact that he had been experiencing problems at work, had recently had multiple confrontations with his supervisors, and had inquired as to whether one of his supervisors would be at work on the day he brought in the gun. Further, on the day he brought the firearm to work he ignored an order to keep the weapon out of the production area and he kept it in close proximity until the police arrived. This evidence coupled with McDade's stated intention to shoot his supervisor gave rise to the reasonable inference that he intended to kill his supervisor. *See State v. Widner*, 69 Ohio St.2d 267, 270, 431 N.E.2d 1025, 1028 (1982) (holding that the jury could reasonably infer defendant's specific intent to kill when he used a firearm because it was, "an inherently dangerous instrumentality, the use of which is reasonably likely to produce death").

In addition, McDade's confession is not ambiguous because of his apparently mistaken belief that his supervisor was "gay." The fact that McDade's assumption about his supervisor's sexual orientation may have been incorrect is not material to his manifested intent to kill. In order to convict a defendant for attempted murder, proof of motive is not necessary. *See State v. Lancaster*, 167 Ohio St. 391, 396-97, 149 N.E.2d 157, 162 (Ohio 1958) (holding that while evidence of motive is relevant and material in homicide cases, proof of motive is not essential to a conviction) (quoting *Fabian v. State*, 97 Ohio St. 184, 119 N.E. 410 (Ohio 1918)).

Further, while McDade's acts did not reach the point of the last proximate act, they did satisfy the substantial step requirement in that they corroborated his criminal intent. *Woods*, 48 Ohio.St. at 132-33, 357 N.E.2d at 1063 ("this standard does properly direct attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime . . ."). McDade's acts of bringing the gun to work, taking the gun into the production area despite the plant manager's orders to the contrary, keeping the gun in close proximity, and wearing protective eyewear corroborate his intent to kill his supervisor and satisfy the substantial step requirement. *See State v. Green*, 122 Ohio App.3d 566, 702 N.E.2d 462 (Ohio Ct. App. 1997) (lying in wait in victim's van and slashing the back of one of the seats while thinking about killing the victim constituted a substantial step toward aggravated murder). Consequently, McDade's conviction for attempted aggravated murder was based upon sufficient evidence.

No. 03- 4235
*McDade v. Russell*

8

We find no reason to disturb the district court's factual findings or the decision to deny the writ of habeas corpus. Accordingly, we **AFFIRM** the district court's denial of McDade's petition for a writ of habeas corpus.